St. Louis, Iron Mountain & Southern Railway Company
*v.* Ingram.

## Opinion delivered May 22, 1916.

1. Master and servant—injury to servant—defective appliance—federal employer's liability act.—Where a servant of a railway company is injured, and the case is controlled by the Federal Employer's Liability Act, the presumption prevails, even after proof of the defect, that the railway company was not aware of its existence, and until it is shown that the railway company knew, or, in the exercise of ordinary care, should have known of the defect, it is not charged with that knowledge.

2. Master and servant—injury to servant—duty of master to inspect for dangers.—The master is required to make an inspection only when ordinary care suggests the necessity for it; and the inspection must be such as ordinary care suggests as being necessary under the circumstances of the case.

3. Master and servant—injury to servant—duty to inspect—failure.—In an action for damages for personal injuries, *held,* under the evidence that it was a question for the jury whether the master had failed to discharge his duty to make an inspection.

4. Jurors—bias—qualification—personal injury action.—Where a juror is called who has recently had protracted litigation with one of the parties to the suit then before the court, in which ill-will was engendered, and in which the juror was represented by the same attorney who was then appearing against the juror's former adversary, it is the better practice for the court to hold the juror disqualified, without reference to his existing opinion as to his own freedom from bias or prejudice, but this court will not say that that should be done, as a matter of law, nor that error was committed where the trial court held the juror competent.

5. Damages—personal injury action—amount.—A judgment for $9,000 is not excessive, when plaintiff sustained a severe injury to his leg by reason of defendant's negligence, where seven different operations, each under an anaesthetic, were performed on the leg, plaintiff being confined to a hospital many weeks, suffering intense pain, and partially losing the use of his leg.

6. Railroads—personal injury action—statutory lien—limitations.—The statutory lien, fixed by Kirby's Digest, §§ 6661-6662, does not attach against a railroad, or the receivers thereof, where an action against it for personal injuries is brought after the lapse of one year.

7. Limitations—statutory right.—When a statutory right is created which did not exist at common law, and the statute giving the right, also fixes the time within which the right may be enforced,

the time so fixed becomes a limitation or condition upon the right of action and controls, and where the act which creates the limitation also creates the action to which it applies, the limitation is not merely of the remedy, but also of the right of action itself.

Appeal from Jackson Circuit Court; *John W. Stayton,* Special Judge; modified and affirmed.

*Troy Pace,* for appellant.

1.   This suit is based upon the Federal Employers' Liability Act, and liability must be determined by it. 229 U. S. 146; Roberts, Injuries Interstate Employees, § 30; Thornton, Fed. Employers' Act (3 ed), § 45. This is but a re-enactment of the common law liability of the master. 233 U. S. 492; 234 *Id.* 725. The general presumption is that the appliance was not defective, and if shown defective there is a further presumption that the master had no notice. The burden is on the servant to negative these presumptions and show negligence. 4 Thompson on Negl., § 3865; 7 Jur. (N. S.) 767. Negligence is not proven or inferred simply from the occurrence of the accident. 152 U. S. 684, 690. The burden is on the servant. Wood on Master and Servant, § 382; Sh. and Redf. on Negl., § 99; 2 Thompson on Negl., § 48; 1 White on Pers. Inj. on Railroad, § 79.

There was no evidence that the appliances had the appearance of being defective. 79 Ark. 437; 101 *Id.* 119; 100 *Id.* 476. Negligence must be proven. 88 *Id.* 465; 92 *Id.* 350; 99 *Id.* 265. A verdict for defendant should have been directed. 71 S. W. 540; 78 *Id.* 99; 93 *Id.* 682; 71 *Id.* 507.

2.   No duty of inspection devolved upon the master. The skid was a simple contrivance or appliance. 72 S. W. 712; 88 *Id.* 36; 108 *Id.* 383.

3.   No presumption of any kind arises against appellant from the fact that the skid broke. 51 Ark. 467; 74 *Id.* 19; 79 *Id.* 76; 90 *Id.* 326; 105 *Id.* 161.

4.   Craft was not a competent juror. 102 Ark. 180; 60 *Id.* 221; 93 *Id.* 301.

5. Appellee testified that he could not walk without a crutch and yet the next day he walked freely without one. Appellee wilfully exaggerated and a new trial should have been granted. 51 L. R. A. (N. S.) 286, and notes; 37 *Id.* 429.

6. The verdict is excessive and it was error to declare the judgment a lien on the roadbed, etc., under section 6661, Kirby's Digest, because the year had expired. 93 Ark. 234, 238-9; 74 *Id.* 528, 532.

*Gustave Jones* and *L. L. Campbell,* for appellee.

1. Where an appliance breaks in consequence of a visible defect, or of a defect which should have been discovered by the master in the exercise of reasonable care, then the question of negligence is one for the jury. 4 Thompson on Negligence, § 2803. This principle is recognized by appellant in its 4th and 6th instructions.

2. "Ordinary care" and "reasonable care" are defined in Bouvier Law Dic., Vol. 3, 2426; 4 *Id.* 150; 113 Ky. 952. Appellant can not complain of the instruction on this subject.

3. The liability of the master for injury from defect in a simple tool is stated in 13 L. R. A. (N. S.) 668, 687; 40 *Id.* 832; 132 Ga. 221; 140 Mo. App. 524; 41 Ind. App. 588. Our court follows this rule. 117 Ark. 524.

4. These skids may have been reasonably safe for stakes, but that would not imply that they were reasonably safe for skids. 48 Ark. Law Rep. 316, 320; *Ib.* 242. Appellee had a right to rely upon the foreman's superior knowledge and there was no question of assumed risk.

5. No inspection was made of the skid. By the observance of ordinary care notice of the defect would have been brought home to the master. 51 Ark. 467; 92 *Id.* 350.

6. The supplemental motion for new trial was properly denied. 91 Ark. 362; 53 *Id.* 166; 60 *Id.* 257; 85 *Id.* 179. The verdict is not excessive and the judgment should be affirmed.

SMITH, J. This is the second appeal of this case. The opinion upon the former appeal will be found in 118 Ark. 377, and the facts as there stated are substantially the same as those developed at the trial from which this appeal is prosecuted, except in the respects to which attention will be called. At the trial from which the first appeal was prosecuted, appellee predicated his right of recovery on the Act of the General Assembly of this State approved March 8, 1911 (Acts 1911, p. 55), but on the remand of the cause appellant amended its answer and alleged that, at the time of his injury, appellee was employed in interstate commerce and that his right of recovery, therefore, depended upon the Federal Employers' Liability Act of April 22, 1908, and not upon the State statute under which the first trial was had. Appellee conceded that this was correct, and all the instructions given were drawn to conform to the Federal statute.

The difference between the two statutes, so far as it is material here to consider the difference, is that, under section 2 of our statute, the railroad company is deemed to have knowledge of the defect in its appliances, and proof of the existence of the defect is *prima facie* evidence of negligence; while, under the Federal statute, the common law rule in this respect has not been changed.

(1) Under the State statute the servant need only to prove that he was injured by reason of a defective appliance to make a *prima facie* case; while, under the Federal statute, the presumption prevails, even after proof of the defect, that the railway company was not aware of its existence, and until it is shown that the railway company knew, or, in the exercise of ordinary care, should have known, of the defect, it is not charged with that knowledge.

At the trial from which the first appeal was prosecuted it was shown that appellee was injured by reason of the fact that a skid broke and threw a piece of piling on him. There was expert evidence showing that a sound skid should have safely supported a weight several times

greater than that of the piling which caused the skid to break. Thereupon the court directed the jury to find for the plaintiff upon the question of negligence, and submitted to the jury the question only of the assessment of damages. We held that this was error, as, under the evidence, the jury should have been permitted to pass upon the question of the primary negligence of the company. Attention was called to the evidence of the foreman of the gang, of which appellee was a member, wherein he stated that "he observed the guard rails after they were taken from the bridges and that there were no defects in them." At the trial from which this appeal is prosecuted the foreman was not so definite on the subject of the inspection of the timbers from which the skids were made. Indeed, appellant undertook to impeach him by proof of contradictory statements on this subject contained in his evidence on the former trial. At this last trial he was asked, "How close did you ever get to the skids that were being used?" and he answered, "I suppose I passed them in my work laying on the ground." He was asked the following questions and gave the answers set out: "At that time did you give them any particular inspection?" A. "No, sir." "You just saw them like passing by this courthouse, and see them?" A. "Yes, sir." "Did you ever make inspection of the skid that broke with a view to see if it was defective?" A. "No, sir."

It appears, therefore, that the jury was warranted in finding that no inspection was, in fact, made.

Appellant insists, however, that the evidence is not sufficient to warrant the finding that reasonable care required that an inspection be made; and it also insists that an inspection such as would have been required by the exercise of ordinary care only would not have revealed any defect in the skid. In other words, if a defect existed the exercise of ordinary care in inspecting the skid would not have disclosed its existence.

As at the former trial, so in this, the proof showed that a skid the size of the one in use when appellee was injured should have safely supported several times the weight of the piling which caused it to break. The expert witness stated it should have sustained ten times the weight of the piling. The conclusion, therefore, is warranted that the skid was, in fact, defective.

It will be borne in mind that appellee was not employed at the skid which broke and he was not, therefore, afforded an opportunity to make an inspection of it.

(2) Appellant insists that this case is controlled by the principle announced in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Andrews,* 79 Ark. 437, in that an inspection which ordinary care only would have suggested, would not have revealed the defect in the skid.

The Andrews case contains a very clear declaration of the law on this subject. The master is required to make an inspection only when ordinary care suggests the necessity for it. And the inspection made must be such as ordinary care suggests as being necessary under the circumstances of the case.

(3) Was the jury warranted, under the evidence in this case, in finding that such a duty rested upon appellant and that there was a negligent failure to discharge it? As has been shown, the jury was warranted in finding that an inspection was not made, and no attempt is made to show that appellee was guilty of contributory negligence. The timbers were old and had been long in use on a bridge and thereby exposed to the action and effect of the weather. They had been so exposed for a sufficient length of time to suggest the necessity that they be replaced with newer timbers. They had been "dapped" or notched so as to fit down over the ties about two inches. Before they had been "dapped" they were 6x8 timbers. When they were removed these notches were trimmed down so that the timber became 4x8. The interval between the time they were "dapped" and afterwards trimmed down represents the time they were used

as guard rails on the bridge, and the length of this time is not shown further than that it had become necessary to replace them. These guard rails were trimmed down to be used as stakes to put on the sides of flat cars as uprights to hold lumber or logs on the flat cars when wired at the top, and might have been safe when used for this purpose without also being safe for skids. At least the jury might have so found. This skid was not produced at the trial, and the nature of the defect can only be conjectured. Yet that it was defective is reasonably certain, or it would have safely held up the weight which caused it to break. Although similar skids have been safely used for loading this piling it is not shown that this defective skid had been so used. Notwithstanding the timber had been dressed down to be used as a guard stake, the foreman directed its use as a skid and did this without causing any inspection to be made to ascertain whether its previous use and exposure had rendered it unfit for that purpose. We think this evidence presents the question whether the master discharged his duty in failing to make an inspection.

(4) It is insisted that error was committed by the court in holding competent to serve as a juror one J. T. Craft, who was a member of the regular panel of the petit jury. It was shown that Mr. Craft was the plaintiff in the case of *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Craft,* 115 Ark. 483, which case was carried to, and affirmed by, the Supreme Court of the United States (237 U. S. 648), and that in all this litigation he had been represented by the same firm of attorneys which was representing appellee at the trial below, and he admitted that during the progress of this trial some ill-will had been engendered between himself and some of the subordinate officials of the railroad company. In answer to the question if he did not entertain some slight ill-will towards the appellant company he answered, "Not a thing in the world, sir; not a thing in the world against them. My difficulty was settled, I will say, satisfactorily settled."

And in other answers he disclaimed any bias or prejudice which would have disqualified him. He was held competent and appellant exhausted its last peremptory challenge on him. As has been said in numerous cases, the trial court, is, of necessity, vested with a large discretion in passing on the questions of fact which arise in the examination of a juror on his *voire dire.* He sees and hears the examination and can judge of the candor and truthfulness of his answers to the questions asked, and in such cases we reverse only where it appears that the trial judge abused his discretion. While it is true that in a case such as this, where it appears that the juror has recently had protracted litigation with one of the parties to the suit before the court, in which ill-will was engendered, and in which the juror was represented by the same attorney who is then appearing against the juror's former adversary, it is safest always, in view of the frailty of human nature, to hold such juror disqualified without reference to the juror's existing opinion as to his own freedom from bias or prejudice, yet we can not say, as a matter of law, that this should be done in all cases; nor can we say that error was committed in not so holding in the present case.

(5) It is urged that the damages assessed are excessive, the verdict having been for $9,000, for which amount a judgment was rendered. It is true appellee did not lose his leg as a result of his injury, nor will he entirely lose the use of it, yet there is evidence to support the finding that the injury is a permanent one. According to appellee and the evidence in his behalf his damages are far greater than they would have been had he lost his leg by amputation. Seven different operations were performed on his leg, each being done under an anaesthetic, and these operations were made necessary by a condition which confined appellee in hospitals for many weeks, during which time his suffering was very intense. In view of this suffering and the loss of time and expense

and the impaired earning capacity we can not say the verdict is excessive.

A supplemental motion for a new trial was filed, in which a showing was made that appellee's injuries were exaggerated by him; but this motion was heard and disposed of on conflicting evidence, and we can not say the finding of the court is unsupported by the evidence.

(6-7)  It appears that the former appeal in this case was prosecuted from the Independence Circuit Court, in which county the suit was originally brought, but that upon the remand of the case a nonsuit was taken and a new suit brought in the Jackson Circuit Court, but that more than a year had elapsed after appellee's injury before this last suit was brought, yet, notwithstanding this fact, the lien provided by sections 6661 and 6662 of Kirby's Digest was adjudged in his favor.

Section 6661 provides that ``* * * every person who shall sustain loss or damage to person or property from any railroad for which a liability may exist at law * * * shall have a lien on said railroad * * * for said damages and upon the road-bed, buildings, equipments, income, franchise, right-of-way, and all other appurtenances of said railroad, superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees, and beneficiaries under trusts or owners.''

Section 6662 reads as follows:

``The lien mentioned in the preceding section shall not be effectual unless suit shall be brought upon the claim, or the claim shall be filed by order of court with the receiver of said railroad within one year after said claim shall have accrued.''

Appellee insists that these sections should be construed to mean that the claimant has one year after his claim has been reduced to judgment, in which to file his claim with the receivers who now have charge of the appellant railway company.  We think the language of the

statute, however, precludes any such construction. No difference in time is made in favor of a claimant against a railroad company which is in the hands of a receiver over that given a claimant against a road which is not being operated by a receiver, and if there was no receivership, the contention would scarcely be made that more than one year was given in which to bring the suit. We think the word "claim" as here used refers to the cause of action and that the suit to establish it must be brought within one year after it accrued. Such appears to be the effect of the decisions of this court in the cases of *St. L. & N. Ark. R. R. Co.* v. *Bratton,* 93 Ark. 234, and *St. Louis, I. M. & S. Ry. Co.* v. *Love,* 74 Ark. 528.

Nor do we think that the fact that a suit was brought within one year of the accrual of the cause of action entitles appellee to the benefit of this lien. The present suit in which a lien is sought to be enforced was not brought within a year, although it was brought within less than a year of the date of the nonsuit in the former case. That fact might be sufficient to give the benefit of the lien if the provision for bringing the suit within one year was treated as a statute of limitations. But we think it is not to be so treated. It is rather a condition upon the performance of which the right to the lien is created. A very similar question was involved in the case of *Anthony* v. *St. Louis, I. M. & S. Ry. Co.,* 108 Ark. 219. That was a case arising under section 6290 of Kirby's Digest, commonly known as Lord Campbell's Act, in which certain minors sought to recover damages for the alleged negligent killing of their father more than two years prior to the institution of their suit. It was there contended that the provision that the suit be brought within two years of the death of the person for whose death damages were claimed was a statute of limitations and did not apply to persons under disabilities, which exempted them from the operation of the statute of limitations, but it was there said that when a statutory right was created which did not exist at common law, and

the statute which gave the right also fixed the time within which the right might be enforced, that the time so fixed becomes a limitation or condition upon the right of action and controls, and that inasmuch as the act which created the limitation also created the action to which it applied, the limitation was not merely of the remedy, but also of the right of action itself. See authorities there cited. So, here, a preference is given for which no authority can be found in the common law. The preference exists only because the statute has given it, and one who wishes to avail himself of its benefits can do so only by complying with its terms. As appellee did not bring his suit within the time limited by the statute he can not claim the lien there given and, in this respect, the judgment of the court below will be modified, and, as thus modified, will be affirmed.