Argued May 6, reversed June 25, petition for rehearing
denied September 9, 1952

NEWTON ET UX. *v.* PEAY ET UX.

245 P. 2d 870

*Charles E. Boardman,* of Bend, argued the cause and filed a brief for appellants.

*Charles R. Marsch,* of Bend, argued the cause and filed a brief for respondents.

Before BRAND, Chief Justice, and HAY, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is a suit for specific performance of a written contract for the sale of land and for an abatement of the purchase price, brought by Eldridge M. Newton and Dorothy Newton, as plaintiffs, against R. W. Peay and Alice A. Peay, as defendants. Defendants filed an answer denying all the material allegations of plaintiffs' complaint, and a cross-complaint praying a decree of strict foreclosure of the contract. A decree was entered dismissing defendants' cross-complaint and awarding damages to plaintiffs against defendants in the sum of $1,080, and decreeing that the purchase price of the lands described in the complaint be abated and reduced in the said sum of $1,080. Plaintiffs appealed, and defendants cross-appealed.

Plaintiffs' appeal is based solely upon the contention that the court erred in fixing the amount of damages to be used as the basis of an abatement of the purchase price. Defendants' cross-appeal is based upon the claim that, under the evidence, plaintiffs were not entitled to any affirmative relief, and upon the further ground that the court erred in dismissing their cross-complaint.

Prior to and on July 20, 1950, defendants were the owners in fee simple and in possession of the following described real premises located in Deschutes county, Oregon, to-wit:

The Northeast Quarter of Northwest Quarter (NE ¼ NW¼), Section Four (4), Township Eighteen (18) South Range Twelve (12), that part of what is now known as Tract H-1, Bend Industrial Area Number One, formerly part of Bend Park, more particularly described as follows:

Beginning at a point 175.27 feet South and 2001.09 feet East of the Northwest corner of said Section Four (4), said point being the Northeast corner of said Tract H-1, thence due South 520 feet, then South 45° West 127.28 feet, thence due West 310 feet, thence North 110 feet, thence due West 220 feet to a point on the East line of South Fifth Street, thence due North 75 feet along the East line of South Fifth Street, thence due East 100 feet, thence due North 75 feet, thence due West 100 feet to the East line of South Fifth, thence due North along the East line of South Fifth 200 feet, thence due East 275 feet, thence due North 150 feet, thence due East 345 feet to the point of beginning.

On July 20, 1950, plaintiffs and defendants entered into a written contract of purchase and sale of said premises. As the purchase price of said premises, plaintiffs, as the purchasers, agreed to assume and pay a certain mortgage indebtedness against the property and to pay defendants the sum of $4,512.34, paying $1,500 in cash upon the execution of the contract, and agreeing to pay the balance in monthly installments of $40 each with interest. Plaintiffs were let into immediate possession. The land as described by metes and bounds contains 5.63 acres, though in describing the premises in the contract no mention was made as to the number of acres.

It appears from the evidence that, before the written contract was entered into between the parties, and while negotiations for the sale and purchase were being carried on by them, plaintiffs, upon two or more occasions, inspected the property. Upon at least one of these inspection tours, defendants pointed out to plaintiffs what they considered to be the boundary lines of the property and represented that the entire tract contained 9.5 acres of land. Later it was discovered by the parties that there were only 5.63 acres. There is a dispute in the testimony between plaintiffs and defendants as to whether this discovery respecting the true number of acres in the tract was made prior to or after the written contract was executed. Defendants maintain that it was discovered before the contract was entered into, and that the agreement was executed by the parties with full knowledge of the facts. Plaintiffs dispute this claim and insist that they did not learn the true situation until a few days after the contract was signed. However that may be, it will not be necessary for us to settle that dispute in the facts in arriving at our conclusions. There is no dispute between the parties but that defendants did represent to plaintiffs that the tract contained 9.5 acres. Regarding that representation, defendants contended, and offered convincing proof to the effect, that, in making the statement, they acted in good faith, honestly believing it to be true, and did not make it recklessly nor with any intent to mislead and deceive the plaintiffs. Defendants offered a reasonable explanation as to why they themselves labored under a mistaken belief that the tract contained 9.5 acres as they represented to plaintiffs.

We have mentioned the personal inspections of the property made by plaintiffs before purchasing.

The evidence shows that defendants did not assume to point out to plaintiffs the exact boundary lines of the property in question. The testimony regarding what defendants did, in a more or less general way, designate as the boundary lines is quite indefinite. However, it may fairly be concluded from the evidence that defendants, in outlining the boundaries, did include a parcel of land that they did not own. If this tract had been included within the description of the premises set forth in the contract, there would have been at least 9.5 acres in the entire piece.

It is this difference in the number of acres of land which forms the background for the instant litigation.

■ At the outset, it might be stated that, because of the misrepresentation made by defendants as to the number of acres of land in the tract, plaintiffs had the right to rescind the contract, even though the false statement was innocently made. *Dahl v. Crain,* 193 Or 207, 237 P2d 939; *Weiss v. Gumbert,* 191 Or 119, 227 P2d 812, 228 P2d 800; *Sharkey v. Burlingame Co.,* 131 Or 185, 197, 282 P 546; 17 CJS, Contracts, 502, § 147; Restatement, Contracts, 908, § 476.

But plaintiffs did not rescind, nor attempt to rescind. On the contrary, they affirmed the contract and commenced the instant suit.

On December 8, 1950, plaintiffs duly filed their complaint in the circuit court for Deschutes county, by which complaint (omitting formal parts), it is alleged:

"I.

"That defendants are husband and wife and owners in fee of the following described real property situate in the City of Bend, Deschutes County, Oregon, to-wit: [Description is the same as previously set forth].

## "II.

"That defendants to induce the plaintiffs to purchase said lands fraudulently represented that it contained 9.5 acres and comprised certain adjacent lands shown to plaintiffs, when in fact said lands contained not more than 5.63 acres and did not comprise said adjacent lands shown, all of which was known to defendants, but that the plaintiffs believed the representations to be true and in reliance thereon entered into a contract with the defendants to purchase the same to plaintiffs' damage in the sum of $3012.34.

## "III.

"That by the terms of said contract plaintiffs assumed a certain mortgage against the lands in the sum of $2987.66 and paid defendants a cash balance of $1500.00, and plaintiffs further agreed to pay defendants $3012.34 and interest thereon at 4 per cent per annum in monthly installments of $40.00 per month on the 11th of each month beginning August 11th, 1950, in consideration of which defendants agreed to give a deed conveying the same together with an abstract of title or title insurance policy showing marketable title free and clear of all incumberances [sic] excepting the mortgage against said lands assumed by plaintiffs, upon the payment of said sum of money, and further agreed to pay such sum as might be adjudged by the Court reasonable as attorney's fees in case suit was filed to enforce said agreement.

## "IV.

"That plaintiffs have done and performed all of the covenants on their part to be performed under the contract except payment of said balance of $3012.34 and that it is inequitable that plaintiffs should pay the said sum to defendants, but just that there be an abatement in the purchase price and that defendants be required to perform all of the covenants on their part to be performed by

conveying said lands to plaintiff [sic] free and clear of all incumberances [sic] excepting said mortgage and to provided [sic] evidence of marketable title as agreed upon without further payment of money by plaintiffs, but that defendants refuse and neglect to do so though demand has been made upon them.

"V.

"That $450.00 is a reasonable sum to allow as attorney's fees in this suit."

Defendants appeared by answer, by which they denied all the material allegations of the complaint. As an affirmative defense, they pleaded as follows:

"I.

"That prior to entering into a contract for the sale of real property with the defendants, the plaintiffs and both of them were advised by the defendants of the property description. And that the said plaintiffs made inquiry and satisfied themselves as to the extent of the property which they intended to purchase. That the defendants advised the plaintiffs that they did not know the exact acreage encompassed within said property description, but that the plaintiffs notwithstanding entered into said contract and agreed to purchase said property according to the terms of that said contract."

By cross-complaint, defendants alleged the contract, attaching a true copy thereof; alleged a breach of the contract by plaintiffs in failure to pay the monthly installments on the purchase price, and a further breach in plaintiffs' neglect to keep the property insured against fire as agreed; alleged performance of the contract on defendants' part and their readiness, willingness, and ability to convey the lands by good and sufficient deed; set forth what they claimed to be the amount of a reasonable attorney's fee; and prayed a decree of strict foreclosure of the contract.

By their reply, plaintiffs denied the material allegations of the affirmative defense and the cross-complaint, affirmatively alleged that the property is worth greatly in excess of any amount due defendants, and that plaintiffs are ready, able, and willing to pay any and all sums found by the court to be due defendants on such terms as the court may find to be equitable.

It will be observed that plaintiffs' cause of action is based upon actionable fraud. They demand damages for the amount they claim was suffered as the proximate result of defendants' alleged fraud, and then pray a decree that the purchase price be abated in that amount. The amount of damages claimed is the balance of the purchase price remaining unpaid.

The case was tried to the court as a suit in equity, and it has been so appealed to this court. We shall treat it as a suit in equity and try it de novo.

Upon conclusion of the evidence and after both parties had rested, but before argument of counsel, the following proceedings took place:

"MR. BOARDMAN: At this time, the plaintiff will move to amend the complaint. This will be based on the authority of a recent decision of the supreme Court of Oregon, 188 Oregon 550. That case comprises about two pages.

"THE COURT: What is the proposed amendment, Mr. Boardman?

"MR. BOARDMAN: For the record to make an amendment that the contract was entered into under mutual mistake in lieu of fraud. And that we be permitted to file an amendment in writing.

"THE COURT: Do you want to file an amended complaint or make some amendment to the existing one?

"MR. BOARDMAN: That will be in your discretion. It will be solely to the change from the

allegation of fraud to that of mutual mitsake. No other changes.

"THE COURT: Abandoning your charge of fraud and placing it upon a basis of mutual mistake?

"MR. BOARDMAN: Yes, to conform to the proof.

"THE COURT: And the relief you would still require is—

"MR. BOARDMAN: The same.

"THE COURT: Abatement in the balance?

"MR. BOARDMAN: Yes."

The trial court did not pass upon this motion, nor was there at any time tendered by plaintiffs or filed the proposed amendment to the complaint. Immediately following the foregoing proceedings there was some argument by counsel to the court, but the record does not disclose what that argument consisted of, though it may justly be inferred that a part of it at least was devoted to the motion for an amendment of the complaint.

Upon conclusion of that argument, the trial court made the following statement of record:

"THE COURT: I think it will be necessary to take under consideration the matter of this motion. I had pretty definitely the question of the matter of fraud. I tell you frankly my conclusions now, having listened to the testimony and considered the facts, there was no misrepresentation on the behalf of Mr. Peay and that he actually believed he had nine and a half acres when he made that statement. And he acted upon it. Whether Mrs. Newton learned of the actual shortage before the contract is open to some question. Maybe she did and maybe she didn't. Listening to the testimony of Mrs. Newton in the course of the trial of the case and finally this morning I am compelled to the conclusion that her mind is not entirely clear on each of these events

and that what might have happened on each event. That, however, I might pass by.

"I had pretty well made up my mind the question of having made the statement there was nine and a half acres, having made it in good faith and believing that was the quantity of land, may the defendant Peay be held under the circumstances as presented here, even though he made this representation in good faith. Certainly without knowledge or deliberate intent to deceive, and I do not believe it could be said was made recklessly, with disregard to the veracity, as such, but there are some points for determination there, whether, even under the circumstances the defendant may be held for the shortage in the acreage. I am inclined to the belief after the hearing of the whole of the testimony that as far as these people are concerned the plaintiffs and defendants, they were acting in good faith and on the assumption there were nine and a half acres. I am also inclined to the belief that the price was based in some measure on the total acreage included and that there being a shortage of acreage, in fair dealings between two individuals, and if I may so put it in disregard of the niceties of the law as to be responsible for what would be an allowance made for that shortage.

"Now, that again comes back to the point of putting such of the responsibilities of one who owns land, makes a statement there is a certain quantity of land and shows the reasons for that belief, yet, be responsible to the purchaser when he is mistaken in the belief and made the sale on the strength of it.

"So much for the charge of fraud.

"Getting back to the statement or the question of one who made the statement in good faith, actually believed the truth of what he said as to being liable to one who also relied on such a statement, actually believing it and then coming to the fact there was between three and a half and four acres less than the amount of land thought was

involved. But before we get to that question I am going to be obliged to take into consideration the possibility of amendment to the complaint of the charge of fraud and rely upon the question of mutual mistake.

"Upon that, Mr. Boardman, I will give you five days to file a brief."

■ It would have been error on the part of the court had it allowed the proposed amendment to the complaint. The amendment would have introduced an entirely new cause of suit, one very materially different from that alleged. Actionable fraud and mutual mistake differ quite substantially in their effects, as well as in the proof necessary to establish the same. It is unnecessary for us to point out the distinctions, because they are elementary.

Section 1-1006, OCLA, (which section by virtue of § 9-107, OCLA, is made applicable to suits in equity) provides:

"The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons, it may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, *or when the amendment does not substantially change the cause of action or defense,* by conforming the pleading or proceeding to the facts proved." (Italics ours.)

However, the statement made by plaintiffs' counsel in open court that plaintiffs were abandoning the charge of fraud is very material. With fraud out of

the case, there is nothing left upon which to base any finding in favor of plaintiffs.

■ Furthermore, even without this withdrawal of the charge of fraud, it is quite apparent from the record that plaintiffs failed to prove the essential elements of actionable fraud. The trial court failed to find any evidence of fraud, and, under all the facts and circumstances of this case, we cannot say that it existed. We do believe that there was ample evidence of a mutual mistake which could have formed the basis of some relief for plaintiffs, though we do not wish to be understood as holding that such mistake would have justified the relief plaintiffs prayed for.

In *Van Horn Construction Corp. v. Joy et ux.*, 186 Or 473, 207 P2d 157, appears a somewhat exhaustive discussion of the rules applicable in suits for an abatement in the purchase price for a deficiency in title, quantity, or quality of the land contracted to be sold. It is unnecessary for us to repeat that discussion.

In his statement to the court, counsel for plaintiffs directed attention to *Bartholomew v. Bason*, 188 Or 550, 214 P2d 352. The holding in that case is not applicable to the situation now before us. In *Bartholomew v. Bason*, plaintiffs sued for specific performance of a written contract for the purchase of land and abatement of the purchase price on that portion of the land contracted for but unowned by the seller. The parties had entered into a written contract for the sale of certain lots in the city of Salem and also the "South half of what was formerly Franc Street". When the title report was issued (after the contract had been entered into), it was found that the seller did not own the "South half of what was formerly Franc Street". The seller [defendant] in her answer admitted she could not make good title to said parcel of

land, and sought rescission of the contract on the ground of mutual mistake. The trial court held for defendant and granted her affirmative relief as prayed for.

On appeal, this court held that there was no mutual mistake; that whatever mistake there might have been, was on the part of the seller alone. We also held that the purchaser was entitled to his bargain, and, if he wanted to take less in quantity than agreed upon, that was his privilege, and he was entitled to an abatement in the purchase price in the amount of the value of the land, title to which could not be made good.

The complaint was not based upon the theory of actionable fraud, with a failure of proof, as is the case now before us.

■ For the reasons stated, plaintiffs were not entitled to prevail in this case. The court erred in awarding damages to plaintiffs and in abating the purchase price of the land in the amount so awarded. The record shows that plaintiffs failed, neglected, and refused to pay the monthly installments upon the purchase price as they became due as required by the contract, or any part thereof, and are in default. Defendants were entitled to a decree of strict foreclosure, and the court erred in dismissing their cross-complaint.

The decree is reversed and this cause remanded with directions to enter a decree dismissing plaintiffs' suit and allowing the prayer of defendants' cross-complaint for foreclosure of the contract. As a part of such decree, defendants should be allowed a reasonable attorney's fee, and the decree should provide a period of six months within which plaintiffs may redeem.

Neither party shall recover costs on this appeal.