Argued March 11, reversed and remanded April 8, 1959

# WOOD *v.* SOUTHERN PACIFIC COMPANY
### 337 P. 2d 779

*Charles S. Crookham* and *David W. Harper,* of Portland, argued the cause for respondent. With them on the brief were Vergeer & Samuels, of Portland.

*John Gordon Gearin,* of Portland, argued the cause for appellant. On the brief were Koerner, Young, Mc-Colloch & Dezendorf, Joseph Larkin and Albert H. Ferris, all of Portland.

Before McAllister, Chief Justice, and Warner, Sloan and Millard, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal by the defendant railroad company from a judgment entered for the plaintiff in the sum of $10,000, in an action brought by the plaintiff, employee of defendant, based upon alleged negligence under the Federal Employers' Liability Act.

Viewed in the light most favorable to plaintiff, it appears that on the 13th day of July, 1954, plaintiff was and had been employed for some time as a car

inspector by the defendant; that his duties as a car inspector included checking trains for defects, and at the time complained of, was checking outbound trains; that his particular duties were "to recheck the train and lift the journal lids, adjust the packing, and if we see anything we are supposed to check for defects too. The box lids are left open for the oilers to oil them, and they put the lids down. We lift them up." Plaintiff, in answer to a question as to whether it was his job to inspect the journal box lids on outbound trains, stated, "No. If you find a defect in a journal box lid with one inspection, such as one is missing, you can put one on if you have time to do it. And if you find one that will not open—the only way you know is to open it, to try and open it before you can see that it is inoperative. You have to start and pull it. If it don't come with one pull you know that it don't operate very good. Some come with two pulls, jerks you see." Plaintiff further testified that if the journal lid was inoperative "you are supposed to put a card on it for repairs or repair it, report it." Each car is inspected twice while in the yard; once when it comes in, and once when it goes out. The only way to inspect a journal box lid is to lift it up by means of a simple tool called a "packing iron" which is equipped with a hook at the end for that purpose. If the lid lifts up easily it is in good working condition, but if not, it is defective. A non-defective lid may be raised by a jerk of the packing iron held in one hand, normally. If a lid is stuck, a bar or jack is provided to force the lid up.

While attempting to open the journal box lid of a car owned by the Union Pacific Railway Company, but a part of the defendant's outbound train, plaintiff was injured when his packing iron disengaged from

the lid, causing him to be struck in the stomach by the free iron, overbalanced, and to tip over a rock and fall backward. Plaintiff first attempted to lift the lid in the normal manner by a single jerk, using one hand, but failed to get the lid open. At this point plaintiff was aware that the lid was "stuck." He next attempted to lift the lid by a jerk, using both hands, when the iron became disengaged. If a lid does not open with one pull, an inspector knows that it does not operate "very good."

Plaintiff testified that there was no tag for repairs on the car and no apparent defect in the journal box lid.

After the cars of an inbound train are inspected for defects, including defects in journal boxes, and if defective-tagged, the cars are then moved in the yard for the purpose of readying them to go outbound. Before departing they are reinspected by a second inspector.

There is nothing in the testimony to indicate in just what particular the journal lid was defective other than the difficulty of opening. There is no direct evidence that an inspection was not made as the car came into the yard or that the defect, if any, existed at the time. When the packing iron disengaged it struck the plaintiff in the stomach, and it appeared plaintiff became overbalanced and hit his foot on a rock on the pathway and fell over and struck a larger rock in the pathway. The rocks were part of material brought in and used for track ballast by defendant. The larger rocks were pushed aside and some were left in the pathway, having been there for some time, and made the pathway narrower.

The court removed from the consideration of the jury certain specifications of negligence alleged in the

complaint but did submit two specifications thereof. One of these charged the defendant with negligence "in operating said equipment at a time when the journal box lid placed on the said journal box on which the plaintiff was required to work, was unsafe, because it was stuck and would not operate or open." The other specification submitted charged the defendant with negligence "in that the defendant failed to remove from the premises certain boulders which were located alongside the car in which the plaintiff was required to work."

Defendant by his answer denied the allegation of negligence, proximate cause and injury and affirmatively alleged contributory negligence on the part of plaintiff. After both sides had rested their case, defendant moved for a directed verdict, stating it would be in the form of an instruction to the jury to find for the defendant because of failure of plaintiff to prove negligence as a proximate cause of his injury.

As a basis for his motion for a directed verdict, defendant says that plaintiff has failed to prove negligence attributable to the railroad company because mere proof that a piece of equipment is defective is not sufficient. Defendant further contends no duty is owed to inspect on the part of the company.

"It is settled by the decisions of the federal supreme court that, under the federal employers' liability act, there is no liability upon the part of a railroad carrier in the absence of negligence for an injury sustained by an employee in the course of his employment.
\* \* \* \* \*

"\* \* \* the defendant is not an insurer nor a guarantor of the safety of an employee while engaged in the performance of his work, \* \* \*." *McPherson v. Oregon Trunk Railway,* 165 Or 1, 6, 8, 102 P2d 726, and cases there cited.

See also *Brady v. Southern R. Co.*, 320 US 476, 88 LEd 239; *Wilkerson v. McCarthy*, 336 US 53, 69 SCt 413, 93 LEd 497, 45 USCA 51.

■ Mere proof that a piece of equipment is defective is not sufficient to establish that the defendant was negligent in failing to find the defect and repair it. *Waller v. N. P. Terminal Co. of Oregon*, 178 Or 274, 166 P2d 488; *Campbell v. Southern Pacific Co.*, 120 Or 122, 250 P 622; *Spencer v. Atchison T. & S. F. Ry. Co.*, 92 Cal App2d 490, 207 P2d 126; *Apache Ry. Co. v. Shumway*, 62 Ariz 359, 158 P2d 142; *Armstrong v. Missouri K-T-R Co. of Texas* (Tex Civ App 1950) 233 SW2d 942; *Edwards v. Baltimore & O. R. Co.*, 131 F2d 366 (7th Cir 1942); *Kent v. Erie R. Co.*, 228 NY 94, 126 NE 646; *St. Louis I. M. & S. R. Co. v. Ingram*, 124 Ark 298, 187 SW 452, affirmed 244 US 647, 37 SCt 741 (1917).

In the case of *Edwards v. Baltimore & O. R. Co.*, supra, at page 368, the court said, "without negligence on the part of the carrier or one of its employees no recovery may be had. The mere happening of an accident is not sufficient."

In *Spencer v. Atchison T. & S. F. Ry. Co.*, supra, it was held that mere proof of insufficiency of a switch was not enough and that "liability cannot be predicated on mere speculation" and that whether there was constructive notice depended on whether the switch in that case was in the same condition for sufficient length of time that it reasonably could be inferred that the railway company had notice.

In *Apache Ry. Co. v. Shumway*, supra, where there was a foreign car involved, owned by the Union Pacific Railway Co., as in this case, it was held that liability for injury occasioned by such a defective car must be predicated upon failure of the railway com-

pany to properly inspect, or having so inspected the car and finding it defective, has put it in its train. In this case there is no substantial direct evidence of failure to actually properly inspect, or of actual notice. The evidence in the instant case is that it was the custom to inspect incoming cars and tag defective equipment. The defect, if any, was not apparent from a visual inspection. The car was in the yard a few hours and it is possible the defect developed there. There was no testimony at all as to the exact cause of the defect, if any, of the equipment.

In *St. Louis I. M. & S. R. Co. v. Ingram,* supra (187 SW 452 at 453), distinguishing between state statutes and the Federal Employers' Liability Act, the court stated:

> "* * * Under the federal statute the presumption prevails, even after proof of the defect, that the railway company was not aware of its existence; and until it is shown that the railway company knew, or, in the exercise of ordinary care, should have known, of the defect, it is not charged with that knowledge."

One of the difficulties in the pending case lies in the absence of any direct testimony showing the actual defect in the journal box or the lid thereto. The defective condition, if any, can only be inferred from the fact that the lid did not open on application of pressure from the packing tool used by the workman.

■ There is no testimony that defendant actually knew of its defective condition, although we are asked to infer that because the train was customarily inspected when it entered the yard, defendant was aware of the defect. In other words, we are asked to infer that because the tool slipped, the journal box or lid thereof was defective; that because of the defect de-

fendant knew of the condition or should have known it and from that infer defendant was negligent, thereby basing an inference upon an inference, which is prohibited. See *Lintner v. Wiles,* 70 Or 350, 141 P 871; *Miller v. Weaver,* 78 Or 594, 153 P 465; *Oregon Box & Mfg. Co. v. Jones Lumber Co.,* 117 Or 411, 244 P 313.

■ But, even if we assume that defendant failed to properly inspect, there is still no liability, for plaintiff was under a duty to inspect. While he claims he was not required to inspect the lid to the journal box, he admits that once he had notice of a defect, then it was his duty to either repair it or report it. That is simply a way of saying that once he was put on notice he had a duty to inspect. There is no duty owed by the railway company to inspect for defective equipment to an employee whose duty is to inspect such equipment, and in the absence of such duty, negligence cannot be predicated on such failure. *Barnett v. Terminal R. Assn. of St. Louis,* 228 F2d 756 (8th CCA); *Brewer's Adm'x v. Louisville & N. R. Co.,* 237 Ky 71, 34 SW2d 949; *Crouch v. Missouri Pac. R. Co.,* 124 Kan 305, 259 P 799; *Jaroszewski v. Central R. Co. of New Jersey,* 9 NJ 231, 87 A2d 705; *Thomas v. Missouri Pac. R. Co.* (Tex Civ App 1926).

> "It has frequently been held that the obligation of a carrier to an employee charged with the responsibility of inspecting or of making repairs to a defective car does not include that of advising him of the exact conditions of the car or furnishing him with a car free from defects and equipped with appliances in good order." *Netzer v. Northern Pacific Ry. Co.,* 238 Minn 416, cert. den. 346 US 831 (1953), 57 NW2d 247 at 252, and cases there cited.

And so, in this case, since plaintiff discovered the defect, if any, in time to avoid the injury, and since it was his duty to inspect and repair or report it, his

failure to do so becomes a proximate cause for which there could be no recovery unless defendant was also negligent on other grounds and such negligence was a proximate cause.

■ We now turn to a consideration of the other specification of negligence set forth in plaintiff's amended complaint having to do with the condition of the premises. It is not contended that the employer did not owe to the employee a duty to furnish a safe place in which to work.

> "So far as concerns the duty of an employer to furnish a safe place in which to work, the federal interpretation of the employer's duty under the F.E.L.A. is derived from and is consistent with the general common law." *Waller v. Northern Pacific Terminal Co.*, 178 Or 274, 299, 166 P2d 488.

> "The rule is firmly established that where plaintiff slips upon an object upon the premises of the defendant, plaintiff must, in order to establish liability, show that the defendant or his agent put the dangerous object there, or that they knew or by the exercise of reasonable diligence could have known that it was there and failed to exercise diligence to remove it." *Waller v. Northern Pacific Terminal Co.*, supra at page 303.

The evidence clearly showed that the boulders in question were placed along the trackage by the defendant, who had control of the premises, and had been left there a considerable period of time. There was also evidence from which the jury could infer that the conditions so described were a proximate cause of plaintiff's injuries. Since there was evidence to go to the jury with regard to one of the specifications of negligence, it follows that the motion for directed verdict was properly denied.

The defendant further claims the court committed error in permitting plaintiff, over objection of defend-

ant, to amend his complaint with reference to personal injury during the trial of the cause. The complaint in question, in addition to alleging that plaintiff was generally wrenched, bruised and battered, and that he suffered a blow to the stomach, causing bruising of abdominal wall and a fracture of several ribs, states, in substance, that there was an aggravation of a former injury to the back and in the area between his shoulders at the base of his neck. With reference to this, plaintiff further alleges that "and caused damage to the nerves and soft tissue thereof," followed by allegations as to pain and suffering and permanent damage.

The record of testimony discloses that during the trial the following transpired:

"Q (By Mr. Harper) How did you feel?

"A I felt—you see, the injuries that I got, it seemed to knock the strength out of my arm. I had no use of my arm.

"Q Which arm was that?

"MR. GEARIN: Just a moment. Your Honor, we will object to that. There is no charge in the complaint that there is any injury to his arm. I refer, your Honor, to Paragraph VIII of the complaint.

"THE COURT: It does allege damage to the nerves and, of course, that may have some effect on the arm.

"MR. HARPER: If it please the Court, I would like to amend my complaint, then, and add injury and damage to the left arm.

"THE WITNESS: My arm is numb right now, numb, you know. It is numby.

"THE COURT: Just a minute, Mr. Wood. Where do you want to make the amendment?

"MR. HARPER: After 'damage to the nerves.'

"MR. GEARIN: Your Honor, may I *interupt?* It says—

"THE COURT: Just a minute, Mr. Gearin.

"MR. HARPER: In Line 3 of the complaint, Page 4, and add 'injury and damage to the left arm.'

"MR. GEARIN: The complaint, your Honor, refers to damages to the nerves and soft tissue of the neck. There is nothing about the nerves of the arm.

"MR. HARPER: And his back.

\* \* \* \* \*

"THE COURT: What do you wish to add?

"MR. HARPER: 'and to his left arm.'

"THE COURT: Any objection, Mr. Gearin?

"MR. GEARIN: I don't think it is timely, your Honor. We have not been put on notice and we have no medical examination. They made no claim to the Hospital Department about it.

"THE COURT: Did your doctor conduct a complete physical examination?

"MR. GEARIN: We don't have a doctor, your Honor. We have not had the man examined. He has been examined by the Hospital Department.

"MR. HARPER: We always stood ready to. They could have.

"THE COURT: I will allow the amendment."

It should be noted at this point that the reference in the pleading "to the nerves and soft tissue thereof" referred back to the allegations having to do with the back, the area between the shoulders and the base of the neck. The testimony indicated that the injuries claimed prior to the amendment had substantially healed, and hence the claims of damage for permanent injury had principally to do with plaintiff's

left shoulder and arms. There is nothing in the record to indicate that defendant or its counsel had any advance notice whatever that any such amendment would be requested at the trial, or that such a claim would be made, nor does plaintiff's counsel seriously contend otherwise. It thus appears that a material amendment was allowed as to a new element of damage. Plaintiff argues that even so, the amendment was allowable as conforming to the proof. We believe that the record otherwise discloses. Counsel, as soon as he became aware of what was happening, made prompt objection, and continued to do so at every opportunity accorded to him. Nevertheless, plaintiff contends that the amendment was proper during trial, by virtue of ORS 16.390. This statute provides that the court in furtherance of justice and upon such terms as may be proper, may, at any time before the cause is submitted, allow a pleading to be amended by conforming a pleading to the facts proved "when the amendment does not substantially change the cause of action or defense.  *  *  *"

■ "Under our statute, the court has discretion, at any time before the cause is submitted, to allow a complaint to be amended to conform to the facts proved, provided the amendment does not substantially change the cause of action." OCLA, Sec. 1-1006; *Asher v. Pitchford,* 167 Or 70, 76, 115 P2d 337; *Elliott v. Mosgrove,* 162 Or 507, 534, 91 P2d 852, 93 P2d 1070. But before such amendment is permitted, evidence upon which to base it must have been received without objection. *Bishop v. Baisley,* 28 Or 119, 127, 41 P 937; *Mendenhall v. Harrisburg Water Co.,* 27 Or 38, 42, 39 P 399; *Tracy and Baker v. City of Astoria,* 193 Or 118, 129, 237 P2d 954; 71 CJS 619, Pleading, Section 285f.

■ Having held that the defendant properly ob-

jected to the evidence relating to the amendment thereof, and since the plaintiff by his said amendment interjected an entire new element of damage, substantial in its nature, without any advance notice whatsoever to his adversary, we hold that the trial court committed prejudicial error permitting the same. See *Newton et ux v. Peay et ux,* 196 Or 76, 245 P2d 870;

*Tracy and Baker v. City of Astoria,* 193 Or 118, 237 P2d 954; *Carnahan Mfg. Co. v. Beebe-Bowles Co.,* 80 Or 124, 156 P 584; *Foste v. Insurance Co.,* 26 Or 449, 38 P 617. See also, *East Side Mill Co. v. S. E. Portland Co.,* 155 Or 367, 64 P2d 625; *Richardson v. Investment Co.,* 124 Or 569, 264 P 458, 265 P 1117.

In view of the conclusion reached, it follows that the decision of the court below be reversed and the case remanded for a new trial. Other assignments of error have been presented, but we feel it unnecessary to discuss them since the issues presented will not be likely to occur at a new trial.

Reversed and remanded.