Argued April 2, affirmed May 1, 1975

# PLOURD, *Respondent, v.* SOUTHERN PACIFIC TRANSPORTATION COMPANY, *Appellant.*

534 P2d 965

*James H. Clarke,* Portland, argued the cause for appellant. With him on the briefs were Dezendorf, Spears, Lubersky & Campbell, Wayne Hilliard and Robert E. Maloney, Jr., Portland.

*Edward J. Niland,* San Jose, California, argued the cause for respondent. With him on the brief were Gearin, Cheney, Landis, Aebi & Kelley, John Gordon Gearin and Jeffrey M. Batchelor, Portland, and Boccardo, Blum, Lull, Niland, Teerlink & Bell and Heber N. Teerlink, San Jose, California.

Before McALLISTER, Presiding Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action for damages for personal injuries sustained by a brakeman on a freight train. It is the second time that this case has come before this court. In a previous decision we set aside a jury verdict in favor of the plaintiff because of errors in the trial of the case and remanded it for a new trial. 266 Or 666, 513 P2d 1140 (1973). The case was then retried before a jury, which again returned a verdict in favor of the plaintiff. Defendant again appeals, charging further errors in the retrial of the case. We affirm.

With the exception of some new evidence, as dis-

cussed below, the facts of the case are set forth in our previous decision and need not be repeated.

1. *The trial court did not err in admitting evidence of earnings of other employees and computations based upon such evidence.*

Defendant's first contentions are that the trial court erred "in receiving computations of the present value of the 1973 earnings of other railroad employees projected over plaintiff's working life expectancy" and "in receiving testimony that the earnings of other employees in 1972 and 1973 were evidence of income which would have been available to plaintiff."

In the appeal to this court following the first trial of this case the defendant did not assign as error the admission of evidence of the earnings of other employees, but complained of the admission of a computation by plaintiff's expert witness showing the present value of the future wages of another brakeman on the same division of the railroad with six months less seniority. In considering the admissibility of that evidence in our first decision in this case we pointed out (at 681-82) that in our previous decision in *Conachan v. Williams*, 266 Or 45, 511 P2d 392 (1973), we had held (at 59) that any evidence which would "indicate fairly the *capacity* of the plaintiff to earn money in his usual vocation" should be admitted. In *Conachan* we also recognized (at 61) that most courts now apparently hold that on the question of earning capacity it is proper to consider, under some circumstances, employment for which plaintiff was qualified at the time of his injury and the usual compensation paid for such employment. We also held in that case, however (at 65), that although a trial judge has considerable latitude in the admission or rejection of such evidence, there should be a showing as a foundation for the admission of such evidence that circumstances are sufficiently similar so as to

provide a proper basis for an informed decision by the trial judge whether such evidence has sufficient probative value so as to be properly admissible.

On the application of these rules to the testimony as offered by the plaintiff on the first trial of this case, the majority of this court held that the trial court erred in admitting that computation. The reason stated by the majority (266 Or at 687) for that holding was that the admissibility into evidence of that computation must be based upon the following assumption:

"* * * [T]hat because there is similar seniority, there is sufficient similarity between earning capacities to make what the other workman earned relevant. The error in that assumption is that plaintiff's demonstrated earning capacity is at variance with such an assumption. Without any showing why plaintiff earned less (i.e., temporary illness, injury, etc.), the jury is allowed to assume that in the future plaintiff will earn as much as the other workman. This is not a valid assumption in the face of proof of what they actually earned and in the absence of proof why plaintiff in the past has been earning less."

■ Thus, the primary question to be decided in determining whether it was error to receive similar computations and testimony on the retrial of this case is whether evidence was offered by plaintiff to show why he earned less than the employees whose earnings were used as the basis for such computations and why it was reasonable for the jury to assume that had he not been injured his earnings in the future would have been comparable to their earnings. In other words, was sufficient evidence offered by the plaintiff on the retrial of this case to satisfy the requirement of similarity in circumstances as a matter of a foundation for the admissibility of such evidence?

Upon examination of the record on the retrial of

this case we find that the evidence offered by plaintiff of the earnings of other employees, upon which the computations of plaintiff's expert were based, consisted of the earnings of eight other brakemen, or brakemen-conductors, who were employed on the same division of defendant's railroad and whose seniority dates were closest to that of the plaintiff. Three employees with the next greater seniority were included, as well as five with the next lesser seniority.[1] According to that evidence, for the year 1969 (the year prior to plaintiff's injury) he earned approximately $7,000, while the earnings of six of the eight employees ranged from $8,500 to $11,629. For the year 1970 plaintiff earned approximately $5,000 as of August 13, 1970 (projected to $8,000 for the year 1970), compared with a range of from $8,441 to $11,738 for three other employees. For the year 1972 (after plaintiff was injured) the range for the eight other employees was (with one exception) from $11,671 to $15,662 and for 1973 that range for all eight other employees was from $11,732 to $16,089.[2]

The explanation offered by plaintiff for his smaller earnings for the year 1969 and 1970, prior to his injury, was that his wife had previously left him with the custody of six children, with the result that

[1] The importance of the seniority dates is that brakemen with greater seniority had preference over brakemen with lesser seniority in working on "runs" which paid greater amounts in wages as compared with "runs" which paid lesser amounts in wages.

[2] When this evidence was offered by plaintiff to show what work was "available" to plaintiff the defendant did not object to the admission of such evidence for that purpose. Defendant complains, however, that these earnings by other employees were then used improperly by plaintiff's experts in projections of what plaintiff would have actually earned. For the purposes of this opinion it will be assumed that proper objections had been made by defendant to this evidence on the ground that there was not sufficient similarity in the circumstances of the other eight employees compared with those of plaintiff so as to constitute a proper foundation for the admissibility of such evidence.

he chose the "runs" that would permit him to be home more often, even though he might have taken other "runs" which would have paid greater amounts in wages. He was remarried on June 29, 1969, a little over one year prior to his injury, but apparently still felt that it was desirable for him, at least at that time, to take "runs" that would enable him to be home as much as possible. He and his family lived on a small farm because, according to his testimony, he wanted to bring up his children on a farm (as he had been brought up) so as "to show the children how to live and give them some values." He also testified that the small farm produced no income other than "a little bit of meat for ourselves."

By the time of the second trial, however, only the youngest of his six children remained at home—a boy age 16. Meanwhile, his income for the first seven and one-half months of 1970 had increased to $5,000 compared with $7,000 for the entire year of 1969. During 1970 he had also been notified of an opportunity for advancement from brakeman to conductor, which would have been open to him in January 1971, and was studying in preparation for qualifying for that advancement. Most of the other eight brakemen with comparable seniority had been advanced to conductor by the time of trial.

Plaintiff also offered testimony to show that he had worked since his graduation from high school and had a good employment record. He was described by his fellow employees as "a very good man" as a brakeman, as "a very competent man" and as an "outgoing enthusiastic person" prior to his injury.

A more comprehensive foundation for the admissibility of the evidence of earnings of the other eight employees and the computations based upon their earnings might have been desirable. In our opinion, however, this testimony was sufficient as a foundation

for the admissibility of both the testimony of the earnings of the eight other brakemen-conductors on the same division of the railroad with the closest seniority and the computations by plaintiff's expert witness based upon earnings within the "range" of the earnings by those employees.[9]

We believe that it could have been properly inferred from that evidence that plaintiff was not only a good father and family man, but was competent, hardworking, intelligent and ambitious, and that as he neared completion of the discharge of his responsibilities as a father in raising six children he would have not only sought promotion as a conductor, but would also have taken "runs" that would have produced income comparable to the income of the other brakemen-conductors.

■ In addition, it must be recognized, as pointed out in *Conachan v. Williams, supra* at 55-57, 64, that the issue in such cases is not the computation of plaintiff's actual future wage loss, which would often be impossible, but the impairment of plaintiff's future *earning capacity;* that proof of the present value of

---

[9] Defendant complains that after offering the evidence of earnings by the other eight brakemen-conductors to show what work would have been available to plaintiff in the future, plaintiff then offered the computations by his expert witness, based upon future earnings within the "range" of the earnings of those employees as evidence of plaintiff's actual wage loss and that plaintiff's attorney told the jury that this evidence demonstrated "the actual measure of plaintiff's loss"—or his "actual out-of-pocket loss"—and that this was a "shabby game." We believe, however, that upon the admission of such evidence and upon a showing of "substantial similarity in circumstances," both parties were then free, as a matter of argument to the jury, to contend what inferences should be drawn by the jury from such evidence. Thus, as a matter of jury argument, it was not improper for plaintiff's attorney to argue that such evidence proved the amount of plaintiff's loss and defendant was free to argue that it did not do so, either because of any differences in circumstances or for any other reason. It was then for the jury to decide what weight was to be given to such evidence.

the impairment of the earning capacity of an injured workman is also not only difficult, but such evidence is seldom, if ever, conclusive, and that evidence of earnings of other employees is admissible upon the issue of impairment of future earning capacity if there is a "substantial similarity" in the circumstances. Also, as we recognized in our previous decision in this case (266 Or at 682) and in *Conachan* (266 Or at 65) the trial judge has "considerable latitude in the admission or rejection of such evidence" provided that he applies this standard in ruling upon the admissibility of such evidence.

It must also be recognized, in our opinion, that it may well be impossible for an injured employee to find some other employees working under identical circumstances for the purposes of evidence of comparative earnings and projected computations of the present value of the impairment of his earning capacity, and that when, in such a case, the plaintiff has offered evidence based upon earnings of other employees who worked under circumstances most nearly comparable to his own circumstances, as in this case, the differences in the circumstances of the plaintiff and of such other employees are matters which go to the weight to be given to such evidence by the jury, rather than to bar the admissibility of such evidence, provided that the circumstances are "substantially similar."

For these reasons, we hold that the trial court did not err in admitting the evidence offered by plaintiff of the earnings of other brakemen and of the computations based upon comparable earnings.[4]

---

[4] Defendant also contends that the trial court erred in permitting plaintiff to amend his complaint to allege a wage loss of $41,000 based upon evidence of earnings of these same eight employees in 1972 and 1973. Because we have held that such evidence was admissible, we also hold that the trial court could

2. *The trial court did not err in excluding evidence relating to defendant's disability and rehabilitation program.*

Defendant contends that the trial court erred in excluding testimony of a member of its Disability Control and Rehabilitation Program describing that program in some detail.

Evidence had been previously received, on offer by defendant, that on February 15, 1974, about three weeks before the second trial, defendant had delivered to plaintiff a letter offering him employment as a clerk.[9]

The excluded offer of proof, which described the Disability Control and Rehabilitation Program in some detail as an established and active program involving a number of disabled employees, was offered to show that the offer of employment to plaintiff was made in good faith, so as "to rebut the inference of bad faith which plaintiff paraded before the jury" upon cross-examination of the witness who testified to the offer of employment.

■ At the previous trial defendant offered evidence that a somewhat similar offer of employment was made shortly before that trial. That evidence, including the testimony of the offer itself, was excluded by the trial court. We held (at 683-86) that the trial court did not err in excluding that evidence, in that, even if an offer of employment under such circumstances may have had probative value so as to be relevant, the danger of possible prejudice to the plaintiff and the danger of prolonging the trial by the in-

---

properly allow such an amendment at the time of trial. See Morrill v. Rountree, 242 Or 320, 325, 408 P2d 932 (1966).

[9] Defendant offered in evidence an exhibit which listed the names and earnings of clerks in various categories and that exhibit was received in evidence.

troduction of collateral issues, among other things, were such that the trial court was entitled to balance those considerations against any such probative value and to conclude that any probative value of such evidence was outweighed by such considerations.

We believe that the same is also true with respect to the evidence offered on retrial relating to defendant's Disability Control and Rehabilitation Program. It follows that the trial court did not err in excluding that evidence.[6]

3. *The trial court did not err in denying defendant's motions for mistrial based upon misconduct by plaintiff's attorney during argument to the jury.*

Finally, defendant contends that the trial court erred in denying its motions for mistrial during arguments to the jury by plaintiff's attorney. We do not condone the conduct of plaintiff's attorney, who was not a member of the Oregon State Bar, in his arguments to the jury. It is well-established, however, that because the trial court is in the best position to evaluate the effect upon the jury of claimed misconduct by lawyers in arguments to juries, we consider the granting or denial of such a motion for mistrial to be a matter which should be left largely to the discretion of the trial judge, subject to reversal only for an abuse of that discretion. See *Martin v. Dretsch*, 234 Or 138,

---

[6] Defendant cites Byrd v. Lord Bros., 256 Or 421, 425-26, 473 P2d 1018 (1970), as holding that a party is entitled to "prove his case to the hilt," and cites Mattechek v. Pugh, 153 Or 1, 14, 55 P2d 730 (1936), among other cases, as holding that a litigant is entitled to rebut prejudicial evidence submitted by his opponent. Those cases involved far different situations from that presented in this case, in which the entire matter of defendant's offer of employment to the plaintiff was at least somewhat collateral to the principal issues of the case and the question whether that offer was made in good faith was quite naturally raised by the fact that the offer of employment was not made until shortly before trial—a fact offered in evidence by the defendant, rather than by any evidence offered by its opponent, the plaintiff.

140, 380 P2d 788 (1963), and cases cited therein. We do not consider the arguments in this case to be as improper as those in *Highway Commission v. Callahan,* 242 Or 551, 555-58, 410 P2d 818 (1966), cited by defendant, in which there were also errors requiring a reversal.[⑦]

In addition, we find, upon an examination of the record, that the trial court gave, or offered to give, cautionary instructions in two of the four instances which were the subject of motions for mistrial and are assignments of error by the defendant; that it sustained defendant's objection to plaintiff's argument in a third instance, and that the fourth instance was relatively innocuous. Cf. *Hovis v. City of Burns,* 243 Or 607, 613-14, 415 P2d 29 (1966).

■ It would serve no useful purpose to describe in detail the various instances of claimed misconduct by plaintiff's attorney. After considering each of them, however, we hold that the trial court did not abuse its discretion in denying defendant's motions for mistrial.

Finding no error, the judgment of the trial court is affirmed.

DENECKE, J., specially concurring.

I specially concur with reference to item numbered 2. of the majority opinion, *"The trial court did not err in excluding evidence relating to defendant's disability and rehabilitation program."* I concur that the trial court committed no reversible error, but for different reasons.

The defendant was permitted to put in evidence that a Disability Control and Rehabilitation Program

---

[⑦] We have also considered the other authorities cited by defendant in this and other assignments and do not consider any of them to control the disposition of this case.

has been established on the Southern Pacific; that the committee reviewed plaintiff's case and after review offered plaintiff a position as a clerk. Testimony was received that the Rehabilitation Committee consisted of the Assistant Division Superintendent, the claims representative, and a Portland physician.

The offer of proof only purported to offer some details of the rehabilitation program; for example, that it has been operating since early in the 1950s. Other parts of the offer of proof referred to facts which would not have been responsive to any questions set out in the assignments of error which were asked and to which objections were sustained; for example, the offer of proof included an exhibit listing the employees who had been given jobs with lighter duties. This would not have been responsive to any question set out in the assignment of error. For this latter reason and for the reason that error, if any, was minimal and, therefore, not prejudicial, I concur.