Argued and submitted March 5, reversed September 10, 1980

# BLANTON,
## *Petitioner,*
### *v.*
# UNION PACIFIC RAILROAD COMPANY,
## *Respondent.*

### (No. A7606-08132,
### CA 11120, SC 26503)
616 P2d 477

John R. Faust, Jr., Portland, argued the cause for petitioner. On the brief was Jeffrey M. Batchelor, Zig I. Zakovics, and Reiter, Bricker, Zakovics & Querin, PC, Portland.

Walter J. Cosgrave, Portland, argued the cause for respondent. On the briefs were Walter J. Cosgrave and Randall B. Kester, Portland.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Peterson, and Tanzer, Justices.

PETERSON, J.

## PETERSON, J.

We granted review in this personal injury case to consider the scope of a trial judge's discretion. The defendant railroad appealed from a verdict and a judgment for plaintiff, a brakeman, in an action for personal injuries under the Employers' Liability Act, 45 USC § 51 (1976), and related statutes. The railroad admitted liability. On trial, the jury found for the plaintiff, and judgment was entered in his favor. Defendant appealed to the Court of Appeals, claiming that the trial court erred in these respects, among others:

A.  In failing to grant defendant's motion for mistrial because of prejudicial statements made by plaintiff's attorney in his opening statement.

B.  In granting the plaintiff's motion to amend his complaint to include a claim of a herniated disc, and in permitting plaintiff's doctor to testify respecting such injury.

C.  In refusal of the presiding judge of the Multnomah County Circuit Court, in the absence of the trial judge, to consider and rule upon defendant's motion for reconsideration of its motion for a new trial and for other relief.

The Court of Appeals held that the trial court erred in failing to grant the defendant's motion for a mistrial and reversed,[1] and plaintiff appealed to this court.

## A.  THE MISTRIAL MOTION

Defendant, at the beginning of trial, admitted liability for the accident, but denied that the plaintiff sustained injury as alleged. The trial court, before

---

[1] *Blanton v. Union Pacific Railroad Co.,* 41 Or App 637, 598 P2d 1244, *modified,* 43 Or App 741, 604 P2d 883 (1979).

either lawyer began to examine the jury panel, told the jury panel:

"The railroad has admitted legal liability for the happening of the accident, but has denied injury or the nature and extent of the injury. So this is a single issue case. We're concerned, therefore, solely with the question of injury and damages."

The defendant claims that statements made by the plaintiff's attorney to the jury, during opening statement, were so prejudicial that the defendant's motion for a mistrial should have been granted. These are the statements which, according to the defendant, prejudiced its right to a fair trial:

"(1)    The 'admission of the railroad that they were at fault.'

"(2)    That there were 90 cars and 8 locomotives and that 'even though there are all these locomotives, there is only one engineer.'

"(3)    That there had been a landslide caused by 'construction work being done by the railroad or someone else.'

"(4)    That 'the engineer thought he could go over the trees without much damage,' and * * * '* * * went across the trees with the train.'

"(5)    That '* * * one of the couplers broke * * * apparently there was a defective coupler in the train and it broke and the train came apart approximately in the middle. * * *'

"(6)    That '* * * the knuckle part * * * the part that joins the two cars together, one of them had fractured which it shouldn't have done, but it fractured, * * *.'

"(7)    That the plaintiff had 20 or 30 hand brakes to tie down.

"(8)    That '* * * the logical thing that I thought or you might think as well, you'd think they'd push the front portion of the train back and replace the knuckle and pull the train away', but that it was done in a different manner because of a lack of enough power.

"(9)    That 'normally the locomotive will carry some spare parts', * * * but that 'the firemen looked in

three units and finally found a knuckle that was interchangeable in the last unit.'

"(10)   That the replacing of the knuckle in mountainous territory is a fairly common occurrence, but that in the dark place where the knuckle was stored, ' * * * the back of the room was covered with oil and he had no choice because they couldn't go without it * * *.'

"(11)   That the oil was there '* * * apparently because of some defect in the locomotive and because of this defect in the locomotive which the railroad acknowledges, because they have admitted they are at fault, * * * The oil shouldn't have been there.'

"(12)   That '* * * obviously the railroad acknowledges they were at fault having this defective locomotive and coupler, * * *.' "

At the conclusion of the plaintiff's opening statement, the defendant's lawyer moved for a mistrial:

"MR. COSGRAVE:   Please the Court, at this time the defendant moves the Court for an order of mistrial upon the grounds that counsel for the plaintiff deliberately, in violation of the warnings that the Court made before the jury was selected, to the effect that this was a case in which liability was admitted and that the defendant should not be penalized for that. Nonetheless, counsel has argued to the jury completely irrelevant matters; one to the effect that the coupler was defective on the car, and then again, that the engine was defective on the train, and further, his opening statement that the —that the charge that the railroad knew they were defective; I submit, Your Honor, that will prevent the defendant from having a fair trial, and it had no relevance whatsoever to this case and counsel knew it. If we were dealing with a man who had never tried a case before, we could, perhaps, excuse it, but I submit, Your Honor, that that prevents a fair trial in this case."

The trial judge denied the motion. In its opinion, the Court of Appeals listed the twelve statements set forth above and concluded:

"Based on our examination of plaintiff's entire opening statement we conclude that plaintiff's statements relating to fault, taken as a whole, were irrelevant and improper, and were prejudicial to defendant's right to a fair trial in view of defendant's prior admission of liability. The trial court erred in denying defendant's motion for a mistrial. * * *" 41 Or App at 640.

The Court of Appeals either considered the matter of the trial discretion and opted not to discuss it, or failed to consider the applicability of trial court discretion. In either event, we believe the trial judge was clearly within the permissible limits of judicial discretion.

In Oregon, as in most states, questions regularly arise in the course of trial which call for procedural rulings by the trial court. Often such questions arise, as here, when inadmissible evidence is brought before a jury, and a party requests a mistrial, claiming that the evidence is so prejudicial that it prevents the party from having a fair trial.

In our previous cases, we have steadfastly adhered to the proposition that the trial judge is in the best position to determine whether inadmissible evidence or improper conduct has such a prejudicial effect upon the jury that it impairs one's rights to a fair trial.[2]

■ The opening statements of the plaintiff's attorney were unquestionably prejudicial, but only in the sense that much unfavorable evidence is prejudicial to the party against whom it is offered. In that

---

[2] *City of Portland v. Holmes,* 232 Or 505, 512, 376 P2d 120 (1962). Other cases consistent with *Holmes* include: *Plourd v. Southern Pac. Transp. Co.,* 272 Or 35, 44, 534 P2d 965 (1975); *Brigham v. Southern Pacific Co.,* 237 Or 120, 122, 390 P2d 669 (1964); *Johnson v. Hansen,* 237 Or 1, 6-8, 389 P2d 330, 390 P2d 611 (1964) ("Judicial discretion, in its very nature, admits of considerable breadth in its application."); *Martin v. Dretsch,* 234 Or 138, 140, 380 P2d 788 (1963); and *Denton v. Arnstein,* 197 Or 28, 55-56, 250 P2d 407 (1952).

sense the defendant's own admission of liability was no less prejudicial.

We are unconvinced that the trial judge abused his discretion in denying the mistrial motion. The trial judge could have reasonably concluded that the comments were not inflammatory, that they had no effect upon the trial or upon the verdict, and that the likelihood of creating sympathy was not great. He was in the best position to determine the effect of the improper statements. The trial judge had the power to make a choice from two or more valid solutions, if supported by the facts. *Yundt v. D & D Bowl, Inc.,* 259 Or 247, 256, 486 P2d 553 (1971). His decision is amply supported by facts, and we cannot say that there was any abuse of discretion.[3]

■ ■ Moreover, the motion for mistrial was not timely. Normally, if improper evidence is offered, objection must be made at the time of the offer or it is deemed waived. An objection generally should be made as soon as its applicability is, or should have been, known to the opponent. Defendant's counsel made no objection to the comments of plaintiff's lawyer until after the opening statement had been completed. We have no doubt that had objection been made to the first allegedly improper statement, the objection would have been sustained and plaintiff's counsel would have been instructed to forbear referring to evidence of defendant's fault. Instead, defendant's counsel opted to wait until the completion of plaintiff's opening statement, and then move for a mistrial. In circumstances such as this, timely objection is required. Failure to promptly object, under the facts of this case, waives the objection.[4]

---

[3] The trial court denied the defendant's motion without setting forth the reasons for his ruling. We express no opinion as to the necessity for the trial court to reveal the reasons for the discretionary ruling.

[4] This does not appear to be the type of case in which a party may prefer not to make an objection at the time in the belief that the objection would leave a more damaging impression in the minds of the jury. *Compare State v. Ellis,* 243 Or 190, 194, 412 P2d 518 (1966).

## B. THE AMENDMENT DURING TRIAL

In his complaint, the plaintiff alleged that he "sustained fractures of his lumbar spine requiring surgical fusing * * *." At trial, over defendant's objection, the plaintiff offered evidence of a herniated intervertebral disc.[5] The defendant assigns this error:

"The trial court erred in permitting plaintiff to change the claim of injury which made his surgery necessary, from one of fractures of the lumbar spine to one of a herniated intervertebral disc; and the court erred in permitting a doctor to testify with respect to a herniated disc, when there was no claim for such injury; and the court erred in permitting the doctor to make his own decision concerning what was within the pleadings."

The issue arose during the testimony of an orthopedic surgeon, Dr. Cherry:

"Q   Doctor, you mentioned that he had a laminectomy, what is the purpose of the laminectomy?

"A   A laminectomy, the word itself means that a lamina is removed or the lamina is partially removed in the back. If you go in after a disc—

"MR. COSGRAVE:   Well, now, Your Honor. I object to that. There's no claim in this case with respect to discs and it—it's not in the case at all.

"(Pause)

"THE COURT:   Well, there is discussion of surgical fusion.

"MR. COSGRAVE:   Yes, only with the fusion but no claim of any herniation of the disc.

---

[5] A word of explanation regarding some medical terms used herein:

An *intervertebral disc* is a fibrous material interposed between the vertebrae in the back. It operates as a shock absorber.

A *herniated disc* is a protruding or ruptured disc which may compress a nerve root, and may cause back or leg pain, weakness, numbness or loss of strength.

A spinal *fusion* is a surgical procedure by which bone from elsewhere in the body is inserted between two or more vertebrae to eliminate movement in the fused space.

A *myelogram* is a diagnostic procedure in which radiopaque fluid is inserted into the spinal arachnoid space, thus permitting visualization or photography of the spinal cord area.

Source:   Transcript and Stedman's Medical Dictionary (4th ed 1976).

"MR. ZAKOVICS: I might have to amend the pleadings. It's certainly no surprise to anyone.

"THE COURT: You may proceed with the doctor, if he's of the opinion that's encompassed in the allegations you can proceed on that basis.

"Q (By Mr. Zakovics:) Continue, please.

"A You might want to repeat the question.

"Q What is the purpose of a laminectomy?

"A The purpose of a laminectomy is to make an exposure to operate on the discus."

Two questions arise from the foregoing record. First, did the court err in permitting the witness to "make his own decision concerning what was within the pleadings"? Second, did the court err in receiving evidence respecting a herniated disc and permitting an amendment consistent with such evidence?

It is the responsibility of the trial judge to rule on questions relating to the admissibility of evidence. A judge abdicates that responsibility if such determination is left to a witness. The defendant claims that the trial judge effectively delegated his responsibility to the witness when he said, "[Y]ou may proceed with the doctor, if he's of the opinion that's encompassed in the allegations."

■ Even in the most complex and technical case, the responsibility for determining whether evidence is admissible is always a judicial function. If the trial judge is unsure whether the evidence is within the pleadings, the preferred course is to make appropriate inquiry, outside the presence of the jury, and then rule. Admissibility should never be determined by the witness.

■ A witness's explanation of the meaning of a technical term may well determine its admissibility and relevance to the issues in the case—indeed, it may be conclusive on the question of the admissibility of the evidence—but the threshold decision of admissibility remains a judicial one. Therefore, if the trial judge permitted the witness to determine whether a claim of

a herniated disc was "encompassed in the allegations," the trial court erred.

But we are unpersuaded that prejudicial error resulted from the receipt of the evidence, for the record clearly shows that long before trial the defendant was on notice of possible herniation of the plaintiff's disc, the disc claim is arguably included within the allegation that a fusion was required, and the trial court, in a real sense, was merely postponing the ruling on the evidence.

ORS 16.390 (1977), which was in effect at the time of the trial of this case,[6] provided:

> "The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved."

The defendant relies on *Wood v. Southern Pacific Co.,* 216 Or 61, 337 P2d 779 (1959). There we reversed a judgment for the plaintiff when the trial court permitted evidence to be received of a claimed arm injury which had not been pleaded and of which, prior to trial, the defendant was unaware. We stated:

> "* * * There is nothing in the record to indicate that defendant or its counsel had any advance notice whatever that any such amendment would be requested at the trial, or that such a claim would be made, nor does plaintiff's counsel seriously contend otherwise. It thus appears that a material amendment was allowed as to a new element of damage. Plaintiff argues that even so, the amendment was

---

[6] The gist of ORS 16.390 is now found in ORCP 23B.

allowable as conforming to the proof. We believe that the record otherwise discloses. Counsel, as soon as he became aware of what was happening, made prompt objection, and continued to do so at every opportunity accorded to him. Nevertheless, plaintiff contends that the amendment was proper during trial, by virtue of ORS 16.390. This statute provides that the court in furtherance of justice and upon such terms as may be proper, may, at any time before the cause is submitted, allow a pleading to be amended by conforming a pleading to the facts proved 'when the amendment does not substantially change the cause of action or defense. * * *"

"* * * * *.

"Having held that the defendant properly objected to the evidence relating to the amendment thereof, and since the plaintiff by his said amendment interjected an entire new element of damage, substantial in its nature, without any advance notice whatsoever to his adversary, we hold that the trial court committed prejudicial error permitting the same. * * *" 216 Or at 72-73.

In the case at bar the defendant was on notice that two of the plaintiff's doctors were of the opinion that the plaintiff had a herniated disc and the disc was located in the same area as the plaintiff's fusion. The plaintiff's complaint contained an allegation of a "twisting, tearing and wrenching of the nerves, muscles, ligaments of his lumbar spine; plaintiff sustained fractures of his lumbar spine requiring surgical fusing." Nearly two years before trial the plaintiff's treating physician made a report to the defendant which referred to the plaintiff's "degenerative disc disease with herniation." Also, the deposition of a Dr. Johnson was taken prior to trial. Dr. Johnson testified to the plaintiff's "degenerative disc disease with nerve root impingement" and that a myelogram revealed "a question of a disc protrusion." The final diagnosis, on the first page of the hospital chart, which was also in evidence without objection, was "herniated L4-5 disc."

We cannot say that the herniated disc claim was necessarily "an entire new element of damage."

See italicized language from *Wood, supra.* After Dr. Cherry left the stand, the trial judge stated:

"THE COURT: You had moved to remove the testimony relative to the herniated disc, *I think in the doctor's testimony it is inextricably woven with the fusion as described.*" (Emphasis added.)

There is ample evidence from the medical reports, the operative record, and the hospital records, to support the trial court's finding that the "testimony relative to the herniated disc * * * is inextricably woven with the fusion * * *," and therefore did not substantially change the cause of action and inject an entire new element of damage. By contrast, in *Wood* the complaint alleged injuries to the abdomen, ribs, back and shoulders; the amendment pertained to an injury to a different body area, the left arm.[7]

## C. IMPEACHMENT OF JURY VERDICT

After judgment, the defendant moved for a new trial, claiming that the trial judge erred in his conduct of the trial. The trial judge denied the motion.

Thereafter, one of the jurors wrote a letter to the trial judge, suggesting the possibility that the jury may have reached a quotient verdict. Copies of the letter were forthwith sent to the attorneys for the parties. The defendant promptly filed a motion for (a) reconsideration of the order denying a new trial, (b) an order permitting defendant to amend its motion for a new trial to include "misconduct of the jury," and (c) an order summoning the trial jury for questioning.

The defendant's final assignment of error in the Court of Appeals was that the Multnomah County presiding judge "erred in refusing to consider and rule upon defendant's motion for reconsideration of its motion for new trial, and for the questioning of jurors concerning the alleged quotient verdict; and for inclusion of misconduct of the jury and illegality of the

---

[7] The trial judge was undoubtedly aware of the *Wood* rule, as he was one of the attorneys involved in that case. 216 Or at 62.

verdict as additional grounds for a new trial." The defendant contends that ORS 3.314(2)[8] *requires* a judge of the circuit court for Multnomah County to act when a judge in any department is absent or disabled, and that in the absence of the trial judge, the decision of the presiding judge that he was "not going to tinker with another judge's case" constituted a failure to "act" pursuant to the statute.

We need not construe ORS 3.314(2). For purposes of this opinion we will treat the presiding judge's ruling as a denial of the defendant's motion.

The defendant sought to have jurors questioned regarding the purportedly illegal verdict and eventually to have the court consider this testimony in determining whether the juror misconduct resulted in an illegal verdict requiring a new trial under ORS 17.610 (1977). The juror's letter, in part, read:

"Dear Sir:

"On March 28, 1978 I was on the jury sitting on the case of George Blanton v.s. the Union Pacific Rail Road.

"During the deliberations the jury was divided six against six at completely opposite figures—the highs being from $350,000 to $650,000 and the lows from $10,000 to $50,000. It was the understanding of all of the jurors that we must reach a decision on some sort of offer but after having voted fifteen times all twelve were adament [sic] in changing, in fact the low votes became lower while the high votes either stayed the same or went up. Arguments were quite heated but we still felt, due to the wording on the verdict form, that it was our duty to reach a conclusion.

"Had this not been the first experience on jury duty for most of us, I'm sure the verdict would have been much different. I realize now that we should have requested further instruction. Our decision was

---

[8] ORS 3.314(2):

"Any judge of the circuit court of a judicial district described in ORS 3.310 may act in any department of the circuit court. In case of the absence or disability of a judge in any department, the judges in the other departments, in so far as practicable, shall act in such department."

reached by taking an average of the low votes, an average of the high votes and then averaging the two.

"This matter has been a cause of great concern to me because I feel that the compromise we made was unfair and possibly not legal. After the close of the trial I found that my feelings were shared by several of my fellow jurors. In fact, it was an unsatisfactory verdict to almost all.

"I trust that this information may help in future trials if not in this one.

"* * * * *"

■ ■ The defendant contends that the letter reveals that the jury reached a quotient verdict, which is illegal under Oregon law. A quotient verdict is a verdict reached pursuant to a jury's agreement to be bound by the figure derived by adding each juror's assessment of damages and then dividing that sum by the number of jurors. *See Hendricks v. P.E.P. Co.,* 134 Or 366, 372, 289 P 369, 292 P 1094 (1930); Annot., 8 ALR3d 335 § 1(a) (1966). This court and a majority of other courts have held that such verdicts are invalid and constitute misconduct on the part of jurors for which a new trial may be granted. *E.g., Hendricks* at 134 Or 371-372; Annot., 8 ALR3d 335, § 3 (1966).

■ It is equally well established that, with but a few exceptions, " '[a]ffidavit[s] of jurors will not be received to impeach their verdict.' " *Carson v. Brauer,* 234 Or 333, 343, 382 P2d 79 (1963), quoting from *Cline v. Broy,* 1 Or 89, 90 (1854). In *State v. Gardner,* 230 Or 569, 371 P2d 558 (1962), we stated the rule "in its accurate form": "* * * [A] verdict is impeachable if justice demands that it be set aside. * * *" *Id.* at 573-574. The defendant contends that the present case falls within the language of *Gardner.* We do not agree.

We explained our holding in *Gardner* in *Carson v. Brauer, supra,* as follows:

"* * * While jurors' affidavits are receivable in evidence in the sense that the trial court should

permit them to be filed, affidavits which disclose nothing more than oral misconduct during the jury's deliberations cannot impeach a verdict. In order to make plain the meaning of the rule, we will restate it: The affidavit of a juror concerning utterances of other jurors during the deliberations or at any other material time cannot warrant the impeachment of a verdict. The kind of misconduct of a juror that will be considered in an attack upon a verdict by a juror's affidavit within the rule set forth in the Gardner and Imlah cases is misconduct that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to a criminal prosecution therefor. We do not necessarily use the words 'fraud,' 'bribery,' 'forcible coercion,' and 'obstruction of justice' in a purely technical sense, but as words that denote such serious breach of the juror's duties that the trial judge would be justified in citing him for nothing less than a contempt of court. *Clark v. United States,* 289 US 1, 77 L Ed 993, 53 S Ct 465, is an illustration. When this court said in the Gardner case that affidavits by jurors may impeach verdicts where there was misconduct of such a serious nature as to have deprived a party of a 'fair trial,' the words 'fair trial' may perhaps mislead some one. * * * To the extent that the 'fair trial' language in the Gardner case may have been understood as a departure from the rule that oral misconduct is not a ground for impeachment, the case must be considered as modified by the statement herein made." 234 Or at 345-46.

Neither *Gardner* nor *Carson v. Brauer, supra,* changed the law of this state with respect to quotient verdicts: juror affidavits may not be used to impeach such a verdict. *E.g., Fuller v. Blanc,* 160 Or 50, 58-59, 77 P2d 440, 83 P2d 434 (1938); *Hendricks v. P.E.P. Co., supra.*[9] The competing judicial principles which must

---

[9] It is not clear from the letter presented in this case that there was a quotient verdict. A key element to a quotient verdict is that the jurors agree to be bound by their computations *before making them. See, e.g., Hendricks v. P.E.P. Co.,* 134 Or 366, 372, 289 P 369, 292 P 1094 (1930); *State ex rel Highway Comm v. Center,* 23 Or App 693, 696, 543 P2d 1084

be considered were set out and discussed by Justice Holman in this court's decision in *Schmitz v. Yant,* 242 Or 308, 312-316, 409 P2d 346 (1965). We see no reason to reiterate that analysis here. Suffice it to say that "as between the conflicting principles of allowing the trial judge wide discretion in granting new trials and of protecting the jury system as an effective method of deciding disputes this court believes the latter to be of the greater consequence." *Id.* at 314.

Whether the defendant's motion was addressed to the trial judge or to the presiding judge, its purpose was the same—to obtain an order permitting examination of the jurors with a view toward consideration of their testimony, by affidavit or otherwise, to impeach their verdict. The motion was properly denied.

We have considered all of defendant's assignments of error.

Reversed.

**TANZER, J.,** concurring.

I concur in the opinion of the majority in all respects except one. In regard to the motion for mistrial, I do not reach the question of discretion. Rather, I concur in the last paragraph of that portion of the opinion which holds that the *motion for mistrial* was properly denied because there was no timely objection to the statements which were the bases of the subsequent motion for mistrial. A purpose of prompt objection is to preclude the necessity of a mistrial. One who waits to object accepts the objectionable and a tardy motion for a mistrial may properly be denied regardless of whether the objectionable matter is prejudicial.

---

(1975). The juror letter in this case does not indicate one way or the other whether the jury bound itself to its computed figure before or after the computation.